**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**IN RE:**
      **YEATTS CONTRACT OF VIRGINIA, INC.**

                                 **Debtor.**                              **Case No. 05-74983-A**

**TOM C. SMITH, TRUSTEE**

                               **Plaintiff,**

**v.**                                                        **APN 05-7114-A**

**COPE INDUSTRIES, INC., et al**

                               **Defendants.**

_____

**MEMORANDUM OPINION AND ORDER**

      The Court is facing again the dilemma of whether to approve a proposed settlement of substantial litigation brought by the trustee against several suppliers of the debtor, wherein he seeks to avoid security interests granted to the six named defendants pursuant to §§547 and 548 of the Bankruptcy Code, over the objection of an unsecured creditor, Richards-Wilcox, Inc. ("R-W").  The Court issued its opinion on February 17, 2006, granting the trustee's motion to approve the settlement he proposed, and on February 17, 2005, counsel for R-W filed a Motion to Alter or Amend [the Court's Memorandum Opinion and Order] and Memorandum in Support.   The thesis of R-W's Motion to Alter or Amend is that the Court made several erroneous factual findings in approving the trustee's settlement proposal.  The Court's findings of fact were based on the trustee's Application to Settle Complaint, which was accurate when the Application

1

was filed, and the representations of counsel at the hearing on February 14, 2005.  R-W is the sole remaining objecting creditor relative to the proposed settlement, which is pursuing the objection before the Court.

The defendants in this Adversary Proceeding concede that the facts presented to the Court were not updated to the time of the hearing, and therefore certain erroneous figures were cited by the Court.  However, the defendants and the trustee state that all parties, including R-W, were aware of the higher unsecured claims figure and its effect of a decreased payout percentage at the time of the February 14th hearing, a contention that R-W does not dispute.  It appears that everyone except the Court had the correct numbers.

## REVISED FINDINGS OF FACT

The trustee did not conduct formal discovery of the six defendants; however, he engaged in extensive informal discussions with counsel for the defendants, which also provided the trustee with documents supporting their defenses to his Complaint.  The trustee investigated the connections between the six secured creditors against whom he filed his Complaint in order to determine if any of them were insiders of the debtor.

The trustee found that one of the defendants, Cope Industries, Inc., was owned by the sister of Jim Yeatts, the principal and owner of the debtor.  He also found that another of the secured creditors, Underwood Enterprises, Inc., was operated by Jimmy Underwood, who was employed by the debtor as a sales manager and who was also an employee of Cope Industries at one time.  He further determined that the president of Allied Contract, Inc. is the brother of Jim Yeatts, the principal of the debtor.  The

corporations owned by these relatives of Jim Yeatts and a former employee of the debtor were customers and are creditors of the debtor.

The trustee further discovered that three of the defendants had no connection, other than a business connection, with the debtor. He found that the defendants advanced substantial sums or goods to the debtor after it granted each of them liens on its assets in December, 2004:

1. Allied Contract advanced to the debtor $62,296.57

2. RMP Associates advanced to the debtor $23,539.00

3. Underwood Enterprises advanced to the debtor $33,000.00

4. Cope Industries advanced to the debtor $477,646.69

5. Stonehill Sales and Services advanced to the debtor $42,190.38

6. A to Z Furnishings, Inc. advanced to the debtor $229,930.43

The advances of these goods or funds were made to the debtor to assist it with its government contracting and they total $868,603.07. The value of the advances made by the defendants to the debtor has not been questioned by R-W. The debtor owed substantial sums to the defendants at the time of the shipment of goods or the advancement of credit to the debtor, and the debtor owed the secured creditors at the time of the filing of the involuntary petition a total of approximately $904,642.78.[1] The total of this obligation of the debtor to the defendants has not been contested by R-W.

---

[1] The proposed settlement order lists a slightly lower amount, $904,588.78, owing to the secured creditors. The amount listed in the settlement order that is due to RMP Associates, Inc., $87,517.59, has been altered from the amount listed in the filed proof of claim, which is $87,571.59. This accounts for the $54.00 difference. The Court is using the higher figure because that is the amount of the filed proof of claim.

The parties to this controversy agree that the payments by the debtor to A to Z Furnishings, Inc., to Stonehill Sales and Services and to Underwood Enterprises are not preferences. They further agree that these entities are not insiders of the debtor.

The trustee has on hand at this time $913,000.00.[2] In addition, he has identified another $1,000,000.00 in potentially preferential payments to other creditors and has hired counsel to pursue the turnover of these payments on behalf of the estate. There are now unsecured claims against the estate approximating $2,642,000.00, based upon filed proofs of claim, subject to objections.[3] If the trustee is successful in collecting the alleged preferential payments totaling $1,000,000, the unsecured creditors would receive approximately 44% of the claims, subject to the payment of administrative expenses and priority claims. If the trustee is unsuccessful in collecting any of the alleged preferential payments, the dividend to the unsecured creditors would be approximately 6% of the claims, again, subject to the payment of administrative expenses and priority claims.[4]

In the proposed settlement of the trustee's claims against the secured creditors, the defendants have agreed to cap their claims at 85.5% of the actual amount due, reducing their secured claims to $733,423.40.[5] As a result, the estate would be guaranteed approximately $140,000.00 after the trustee's proposed commission[6] and the

---

[2] The trustee had already collected $298,000.00 and just received from the United States Army the net sum of $615,000. This recovery is subject to an award of attorney fees to the trustee's counsel for recovering this substantial receivable.

[3] The Court notes that proofs of claim continue to be filed; the last one was filed on March 30, 2006, 2 days after the hearing on this matter.

[4] These figures differ from those considered by the Court in its Memorandum and Opinion dated February 17, 2005 due to the updated information now available to the Court.

[5] While the settlement states that the defendants are capping their recovery at $800,000.00, the defendants and the trustee represented to the Court that the corrected amount was $733,423.40.

[6] It is important to note that the trustee's commission in this bankruptcy case as specifically set forth in the

defendants, with the exception of Cope Industries, Inc. and Allied Contract, Inc. would be left with an unsecured claim for any deficiency. Counsel for both Cope and Allied waived any unsecured claim their clients might have against the estate during the hearing on this matter, which waiver the Court accepts as binding on those two defendants. Finally, while this adversary will be dismissed with prejudice, the trustee retains the right to object to the amount and/or validity of the claims of the defendants on grounds other than those contained in §§ 502(b)(4) or 502(d).

The Court also notes that the proposed Order Approving Settlement tendered by counsel for Cope Industries, Inc. and endorsed by the trustee and counsel for the other defendants contains far more details of the settlement than those set forth by the trustee in his Application to Approve Settlement. That is not surprising to the Court, and based on the signatures of the trustee and counsel for the defendants, the Court accepts that the tendered, proposed order contains the full agreement of the parties to this Adversary Proceeding.[7]

## CONCLUSIONS OF LAW

R-W objects to the proposed settlement basically on two grounds. First, R-W urges that the settlement is not in the best interests of the creditors and the estate because it feels that Cope, Underwood and Allied are insiders of the debtor. We have

---

proposed settlement is **ultimately subject to final approval by the Court at the end of the case**.
[7] All parties in interest could assume and logically conclude from the trustee's Application to Approve Settlement that the settlement included the end of all litigation between the trustee and the defendants, other than possible litigation over the proofs of claim filed by the defendants to this Adversary Proceeding.

cited above the relationships among the debtor and those three creditors, and without reaching a legal conclusion on the issue of insider, we find that that issue would bear further scrutiny in the context of an evidentiary hearing. *See In re Prado Verde Ranch, Inc.*, 250 B.R. 126 (Bankr. D. N.M. 2000). The court in *Prado Verde Ranch* found that the real estate agent proposed by the debtor to sell portions of its real property was run and partially owned by the step-daughter of the principal and owner of the debtor. That court disqualified the step-daughter's company as the real estate agent to sell the debtor's real estate parcels, declaring that her relationship to the debtor's principal was too close; however, we note that the court in New Mexico had already appointed the step-daughter as the ranch manager for the debtor when it declined to allow her company to perform this second function in the reorganization.

The trustee maintains that it would be difficult to establish that all of the said defendants are insiders. The inquiry would require an evaluation of any relationship and the activity and control of individuals involved with the debtor and certain of the other defendants. Those relationships may or may not stand the test of "insider" definition in § 101(31).

If the Court considers, for the sake of the objection filed by R-W, that the corporations of Cope, Underwood and Allied are insiders, that is not the end of the inquiry. That determination, if made, would set in motion a different standard to review the granting of the liens to these defendants and the evaluation of payments made to them by the debtor. The trustee has recited to the Court, in summary form, that the defendants advanced to the debtor, at or after they were granted their liens in December

2004, on the debtor's assets, a total of $868,603.07.  These further advancements of credit, funds and goods extended by the defendants clouds the issues of their being insiders, preferences and lien validity.

The other premise urged by R-W is that the proposed settlement falls "below the lowest point in the range of reasonableness". *See In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995).  In that case, Judge Tice pointed out that bankruptcy judges were charged by the Supreme Court in *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) to make informed and independent judgments of whether a proposed settlement is fair and equitable:

> [A bankruptcy judge should] apprise [himself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.  Further, the judge should form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Austin*, 186 B.R. at 400 (quoting *Anderson*, 390 U.S. at 424).  Judge Tice further analyzed the situation and summarized the test employed by this Court:  "In essence, the court must determine whether the settlement falls 'below the lowest point in the range of reasonableness.'"  *Austin*, 186 B.R. at 400 (quoting *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)).

We have attempted to analyze the facts presented in order to come to an objective opinion of the probability of success of the trustee's claims against the defendants, after estimating the complexity of the litigation, the probable expense and

duration of the litigation and the probabilities of collection. In the final analysis, the Court must decide if the proposed settlement falls "below the lowest point of the range of reasonableness". That latter term and criterion is not defined, but must be a conclusion of the Court in order to refuse to follow the trustee's recommendation.

We still cannot conclude, from the evidence before the Court and the representations of counsel, that there is not a substantial risk to the trustee's success in what would be expensive and protracted litigation. While he may be successful in proving parts of his claim, there is absolute uncertainty of his success in proving all that is necessary to recover from the defendants.

None of the defendants are domiciled in Virginia, and this case would involve substantial discovery and expensive legal and preparation costs to bring the matter to trial. Further, there appears to the Court to be plausible defenses offered by the defendants, and the offer by counsel for the objecting creditors to handle the claims against the defendants on a contingency basis gives the Court little solace. In any event, ultimately the estate would have to bear the expenses of substantial litigation.

The trustee estimates that the proposed settlement will net to the bankruptcy estate approximately $140,000 in guaranteed cash, which may be increased by any other sums recovered by the trustee from the potential preference claims. The Court can conclude that this estate could be substantially depleted by the costs of all the possible litigation, were we to refuse to accept the settlement and were the trustee not successful in its litigation against the defendants. This litigation drives the success of the trustee in his administration of this case, and we cannot say that his analysis of the

litigation is inaccurate. The trustee is a well respected member of the bar of this Court, and he has many years of experience in this arena. Most significantly, the trustee is of the considered opinion that the settlement is in the best interests of all the creditors in the case and has therefore proposed the settlement in good faith. These factors bear heavily on the Court's consideration of the merits of the proposed settlement.

Upon re-analysis and reflection, we cannot find that the proposed settlement between the trustee and the defendants in this Adversary Proceeding falls "below the lowest point in the range of reasonableness." While it may not be the perfect resolution of the estate's claims against the defendants and their claims against the estate, we do not find that the proposed settlement is unreasonable.

## CONCLUSION

For the reasons stated, the Court continues to accept the trustee's evaluation of the potential for success of his claims against the defendants and accepts his recommendation to approve the negotiated settlement. The erroneous facts cited by the Court in its earlier opinion, as corrected in large measure herein, do not change the result of our analysis. We do find that the settlement meets the test of being above the lowest point of the reasonableness, as established by the ruling case law in this jurisdiction. Therefore, the trustee's Application to Approve Settlement, on the terms he has proposed, is once again **GRANTED**. Counsel for Cope Industries, Inc. is directed to submit a revised Order Approving Settlement embodying the rulings of the Court as set out herein.

**IT IS SO ORDERED.**

Norfolk, Virginia
March 31, 2006

_____
Judge, United States Bankruptcy Court

Copies to:
    Richard C. Maxwell, Esquire
    Donald C. Schultz, Esquire
    Robert B. Van Arsdale, Esquire
    Tom C. Smith, Jr., Trustee
    Karen M. Crowley, Esquire
    Peter G. Zemanian, Esquire
    Barry W. Spear, Esquire
    John D. McIntyre, Esquire
    Michael P. Cotter, Esquire